RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0317P (6th Cir.)
File Name: 02a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellant,*

      *v.*
                            No. 01-4334

N'KENLEY ALLEN ELMORE,
      *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00128—Algenon L. Marbley, District Judge.

Argued: August 7, 2002

Decided and Filed: September 17, 2002

Before: SUHRHEINRICH and BATCHELDER, Circuit
Judges; LITTLE, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Louis M. Fischer, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellant. Keith E. Golden, GOLDEN & MEIZLISH CO.,

_____

[*] The Honorable F.A. Little, Jr., United States District Judge for the
Western District of Louisiana, sitting by designation.

1

LPA, Columbus, Ohio, for Appellee. **ON BRIEF:** Louis M. Fischer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Keith E. Golden, GOLDEN & MEIZLISH CO., LPA, Columbus, Ohio, for Appellee.

————————

**OPINION**

————————

ALICE M. BATCHELDER, Circuit Judge. The United States appeals the district court's order granting N'Kenley Elmore's ("Elmore") motion to suppress the evidence obtained by law enforcement officers during a search of a car that he did not own and in which he was neither the driver nor a passenger. Elmore was charged, along with his cousin Orlando Elmore ("Orlando")—the driver of the car—and Tyron Maynus—the passenger—with conspiring to possess with the intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. The cocaine was found in a car driven by Orlando when the officers searched the vehicle after stopping it because it had no visible rear license plate. The district court granted Elmore's motion to suppress the evidence, holding that Elmore had a reasonable subjective expectation of privacy in the vehicle that was sufficient to permit him to challenge the search, and that the search was not based on probable cause or reasonable suspicion and therefore violated the Fourth Amendment. We conclude that Elmore has no basis upon which to object to either the stop or search, and we reverse.

**I.**

On June 21, 2001, Detective Franchie Robinson (Detective Robinson) of the Logan County (Ohio) Sheriff's Department was patrolling on Route 33 when he stopped a 1991 Cadillac because it did not have a visible rear license plate. Ohio law requires that every automobile display valid license plates on the front and the rear of the vehicle. OHIO REV. CODE ANN. § 4503.21. Upon very close inspection, Detective Robinson was able to discern—and with some difficulty, read—through

the car's heavily tinted rear window a temporary license tag. Ohio law also requires that if a license tag is displayed in the rear window of the car, it must be clearly visible and not obstructed by the window's tint. *Id.* Robinson obtained from Orlando, who was driving the car, his driver's license, his insurance information, and the car's temporary registration. Although the driver's license showed that Orlando was a resident of Columbus, Ohio, the registration indicated that the car was registered to Orlando at a Chicago residence address.

A check on Orlando's driver's license yielded contradictory information, and while he waited for clarification and for information on the car's registration, Robinson questioned Orlando about his trip and the identity of his passenger. Orlando explained that he no longer lived in Ohio, that he now lived in Chicago, and that he had traveled to Chicago by bus a few days earlier, purchased the car, and was taking his brother, Tyron, back to Ohio. Robinson then went to the other side of the car and—leaning into the open window—made a similar inquiry of the passenger, Tyron Maynus. Maynus' responses were not consistent with Orlando's—Maynus said the two were friends, not brothers, and that both lived in Columbus—and while questioning Maynus, Robinson smelled the odor of burnt marijuana. His suspicions aroused about both the car and its occupants, Robinson consulted with the other officer who had by then arrived on the scene, and that officer obtained Orlando's consent to search the vehicle. (Orlando contends that he did not give his consent, but the district court assumed, for purposes of the suppression proceedings, that he had consented, but not voluntarily.) Orlando then showed the officers the approximately $10,000 in cash that was in the trunk, and the officers called for a drug dog. The search that ensued after the dog alerted on the car yielded six kilograms of cocaine hidden in secret compartments.

N'Kenley Elmore, the appellant here, was implicated by Orlando, and ultimately Elmore, Orlando and Maynus were indicted for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. Orlando and Maynus

pleaded guilty. Elmore moved to suppress all of the evidence obtained as a result of the stop and the search of the Cadillac, claiming that the stop was illegal from the time that Detective Robinson actually saw the temporary license tag in the rear window of the vehicle, and that the search was illegal because it was neither consensual nor supported by reasonable suspicion. The government challenged Elmore's ability to contest the legality of the stop, since Elmore was neither the owner of the vehicle nor in the vehicle at the time it was stopped.

The district court held an evidentiary hearing, at which Orlando testified that Elmore had given Orlando money to purchase the car; that Orlando was to transfer the title of the car to Elmore once they got the car to Columbus; and that the cocaine in the car was not Orlando's. The district court granted the motion to suppress. Although the court did not address the question of whether Elmore could challenge the initial stop of the vehicle, the court held that as the "putative owner" of the car, Elmore had a subjective expectation of privacy in it; that "an owner's expectation of privacy in a car with tinted windows is of a type that society would recognize as legitimate," and was therefore objectively reasonable; that based on this reasonable expectation of privacy, Elmore could challenge the constitutionality of the search of the car and seizure of the evidence; and that once Officer Robinson detected the temporary license tag in the rear window of the car, regardless of whether that tag could be read through the tinted window, he no longer had any justification for the stop, the subsequent search was unconstitutional, and all evidence resulting from the stop was tainted.

## II.

We review for clear error the district court's findings of fact made with regard to a motion to suppress; we review de novo the court's legal conclusions. *United States v. Ivy*, 165 F.3d 397, 401-02 (6th Cir. 1998). Whether Elmore can challenge the constitutionality of the stop or the search is a question of

which is typically a sealed space without windows, is an area in which society would recognize a legitimate expectation of privacy.) Accordingly, we hold that Elmore had no legitimate expectation of privacy in the Cadillac, and cannot challenge the constitutionality of the search.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's findings of fact and conclusions of law with regard to N'Kenley Elmore's right to challenge the search of the vehicle, we **REVERSE** the judgment of the district court granting N'Kenley Elmore's motion to suppress, and we **VACATE** the district court's findings of fact and conclusions of law with regard to the constitutionality of the stop and the search.

must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.*

Elmore's assertion of ownership of the car is nothing more than a claim that the purchase money had been his, and an expectation that at some time in the future, Orlando would transfer title of the car to him. Nor does the record before us reveal that Elmore asserts ownership of the cocaine that was seized from the car; indeed, the only evidence with regard to ownership of the cocaine is Orlando's denial of ownership. There is no evidence that Elmore had either the right or the ability to exclude others from the car, or that Elmore had taken any precautions to maintain privacy in the car, and it is undisputed that Elmore was nowhere in the vicinity of the car when the search occurred. *See King*, 227 F.3d at 749 (noting that among the factors to be considered, in addition to proprietary or possessory interest in the place to be searched or item to be seized, are "whether the defendant has the right to exclude others from the place in question; whether he has taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.")

The district court's finding that Elmore had a legitimate expectation of privacy in the car because society would recognize as legitimate "an owner's expectation of privacy in a car with tinted windows" at best fails to recognize that—ownership aside—there is no evidence that Elmore even knew that the car had tinted windows; perhaps more importantly, the degree of tint on the windows was illegal and can hardly be considered a "normal precaution[] to maintain his privacy." *Id.* We are left with Elmore's subjective expectation, which the *Rakas* Court explicitly held is not enough. *See also United States v. Jenkins*, 92 F.3d 430, 434-35 (6th Cir. 1996) (noting that a subjective expectation is not enough, that the expectation of privacy must be one that society recognizes as legitimate, and that a tractor trailer rig,

law. *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001).

The first clause of the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Supreme Court has ruled definitively that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). *See also Alderman v. United States,* 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") For that reason, the Court ruled long ago that whether an individual may challenge the constitutionality of a search or seizure is to be determined, not in the context of traditional standing principles, but in the context of substantive Fourth Amendment law. The question, then, is

> whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.

*Rakas v. Illinois*, 439 U.S. 128, 140 (1978).

We turn first to the stop. Elmore has shown no possessory interest in the Cadillac whatsoever. Even if his having supplied the money for the purchase of the car were enough to establish ownership—an issue we need not resolve here—it is undisputed that Elmore was not in the car when Detective Robinson stopped it, nor was he anywhere in the vicinity of the car, nor had he ever even seen the car. The stop of the car did not entail any interference with Elmore's possessory interest, let alone a meaningful one. *Cf. United States v.*

*Powell*, 929 F.2d 1190 (7th Cir. 1991) (holding that vehicle owner not present in the vehicle when it was stopped had not suffered interference with his possessory interest and could not challenge the constitutionality of the stop.)

Because Elmore can show no interference with his possessory interests in the car, he cannot demonstrate that the officers' stop of the car infringed any right personal to him that the Fourth Amendment was designed to protect. The question then becomes whether, if Elmore cannot complain of the stop, he can nonetheless complain of the search of the car.[1] To challenge the search, Elmore must demonstrate that he personally had an expectation of privacy in the Cadillac that society is prepared to consider reasonable. Contrary to the conclusions of the district court, we conclude that Elmore

---

[1] Contrary to the district court's holding, Officer Robinson was *not* prohibited by the Fourth Amendment from conducting a search of the car once the initial purpose for pulling over the car, in this case to verify that the car had license tags, had been fulfilled. *See United States v. Erwin*, 155 F.3d 818 (6th Cir. 1998) (en banc) (allowing an officer who had initially detained a motorist because the motorist matched a police bulletin description of a drunk driver on the loose to search the driver's vehicle when the officer subsequently developed a suspicion that the motorist was trafficking in narcotics). Relying on *State v. Chatton*, 463 N.E.2d 1237 (Ohio 1984), the district court held that in spite of the fact that the temporary tag in the rear window of the car was obscured and virtually unreadable, Officer Robinson could not even approach the driver of the car and ask for identification without violating the Fourth Amendment. The district court was clearly wrong. Not only has Ohio law changed since *Chatton* (Ohio law at that time did not require that the temporary tag be displayed at all), this circuit has repeatedly held that "[o]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citations omitted). Here, the purpose of the stop plainly had not been completed, since the Officer had reason to believe that the display of the temporary tag was in violation of the law. Further, *Erwin* makes it plain that "[a] law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions." *Erwin*, 155 F.3d at 823.

has shown neither an expectation of privacy that is personal to him, *Alderman*, 394 U.S. at 174, nor an expectation of privacy that society is prepared to consider reasonable, *Jacobsen*, 466 U.S. at 113.

The district court's suppression order is premised on the court's conclusion that Elmore could challenge the search because, having provided the money for the purchase of the Cadillac, he had a proprietary interest in it; based on that proprietary interest, Elmore had a subjective expectation of privacy; and Elmore's expectation of privacy in a car with tinted windows was one that society was prepared to recognize as legitimate. In arriving at that conclusion, the district court relied on *United States v. King*, 227 F.3d 732 (6th Cir. 2000), for the factors to be considered in determining whether the defendant had a legitimate expectation of privacy in the place searched. Although *King* accurately sets out the various factors, it is important to note that it is a case involving the basement of a two-family dwelling, not an automobile. As the Supreme Court reiterated in *Rakas*, "cars are not to be treated identically with houses or apartments for Fourth Amendment purposes." *Rakas*, 439 U.S. at 148.

In *Rakas*, the defendants were arrested for armed robbery after officers stopped the car in which they were passengers and, upon searching the car, found a rifle and shells. The defendants, who neither owned nor leased the car and who did not claim to own the rifle and shells, sought to exclude the rifle and shells from evidence, claiming that the search violated the Fourth and Fourteenth Amendments. The Court concluded that the defendants' attempts to suppress the evidence must fail because the defendants "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id*. at 148. The defendants' claim was dependent upon their demonstrating a legitimate expectation of privacy in the areas of the automobile searched, the Court said, and that expectation must be more than a "subjective expectation of not being discovered." *Id*. at 143 n.12. "Legitimation of expectations of privacy by law