NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0475n.06

No. 10-4618

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 04, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| ROBERT E. JONES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: BOGGS, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Robert E. Jones pleaded guilty to one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. 922(g)(1) and was sentenced to a term of forty-two months of imprisonment, followed by three years of supervised release. Jones appeals the district court's denial of his motion to suppress evidence on the ground that the police unlawfully stopped and searched the vehicle in which he was a passenger. Although the police initially had reasonable suspicion to make the traffic stop, the grounds for that suspicion ceased to exist before the police approached the vehicle. Because the continued detention of the vehicle and subsequent search were therefore unlawful, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

-1-

I.

On February 27, 2009, Jones rode as a passenger in a vehicle traveling on Superior Avenue in Cleveland, Ohio. While driving in the opposite direction from Jones, Officer Rich Jackson ("Officer Jackson") and his partner observed that the vehicle in which Jones was riding did not have a visible license plate on the rear bumper, which Officer Jackson believed was a violation of state law. Officer Jackson thus stopped the vehicle. As Officer Jackson approached the vehicle, he noticed that there was a temporary plate attached to the vehicle's rear window. Because fog obscured the plate, Officer Jackson could not make out the numbers until he was 6 to 12 inches away from the vehicle and shined his flashlight on the plate. Although the initial basis for the stop no longer existed, Officer Jackson continued the stop because he believed that the license plate's display in the rear window was illegal. When the driver could not produce his license, Officer Jackson placed the driver in the rear of his patrol car while he attempted to ascertain the driver's identity. Once Officer Jackson discovered the driver had a suspended license, he placed the driver under arrest and ordered Jones and another passenger out of the vehicle. Officer Jackson then searched the vehicle and found a firearm underneath the passenger's seat. Upon questioning from Officer Jackson, Jones admitted that he owned the firearm.

The government indicted Jones for being a felon-in-possession of a firearm on March 10, 2009. Jones moved to suppress, *inter alia*, the firearm on grounds not relevant here. In the motion, Jones described the vehicle as not having any license tags. The magistrate judge held a hearing on Jones's motion on February 24, 2010. During the hearing, counsel for Jones discovered that the vehicle in fact had a temporary tag that was displayed in the rear window and thus claimed that the traffic stop was illegal. The magistrate judge requested supplemental briefing on whether Ohio law

-2-

requires that a temporary license plate be visible to the officer prior to a traffic stop and whether display of a temporary license plate in the rear window is proper. Both parties submitted supplemental briefing and the magistrate judge held another suppression hearing on March 16, 2010. The magistrate judge then issued a report that recommended the motion be denied and informed Jones that he had fourteen days to file objections. Fourteen days later, on April 21, 2010, the district court adopted the magistrate judge's report.

In its opinion, the district court stated that Jones had not filed any objections to the magistrate judge's report. However, when Jones's counsel filed late objections on May 5, 2010, counsel indicated that Jones had previously filed objections pro se. The district court docket does not contain a record of these objections. On May 13, 2010, Jones filed a motion seeking new counsel, asserting ineffective assistance of counsel, based, in part, on his attorney's failure to file timely objections to the magistrate judge's report. The court appointed new counsel on May 17, 2010, who filed a second motion to suppress on July 11, 2010. It is unclear whether this motion was denied or withdrawn.

On July 16, 2010, Jones pled guilty pursuant to a plea agreement. Under that agreement, Jones reserved the right to appeal the district court's denial of his motion to suppress.

II.

We must first address whether the absence of record objections to the magistrate judge's report precludes our review of Jones's appeal. Ordinarily a party that fails to file objections to the magistrate judge's report waives the right to appellate review. *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008). However, "because the rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice." *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *see also Carlson v. Horn*, 899 F.2d 1221, *1 (6th Cir. 1990).

In this case, Jones may have submitted timely objections to the magistrate judge's report. Because the record is unclear on this matter and the government asserted in the plea agreement that Jones could reserve appeal of this issue despite the lack of objections on record, we will review the case on the merits.

III.

A.

We review a district court's factual findings on a motion to suppress for clear error and its legal conclusions de novo. *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009). Because the district court denied Jones's motion to suppress, we consider "all evidence in the light most favorable to the United States." *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008).

B.

The magistrate judge found that Ohio law is not settled on what constitutes proper display of temporary license plates and because "there is existing Ohio case law supporting Officer Jackson's belief at the time he stopped the vehicle and approached the driver that the temporary tag was improperly displayed, Officer Jackson had probable cause that the display in this situation violated the law." In the alternative, the magistrate judge concluded that "after [Officer] Jackson was able to read the license tag, he had an objectively reasonable belief that the driver had violated the law and could lawfully approach the driver and ask the driver questions."

Jones contends that although Officer Jackson initially had reasonable suspicion to stop the vehicle, that suspicion was eliminated once Officer Jackson viewed the temporary license plate in the rear window. Therefore, argues Jones, the continued detention of the vehicle exceeded the scope of the original purpose of the stop and thus violated his Fourth Amendment rights.

A police officer may conduct a brief investigatory stop, also known as a *Terry* stop, of a person if the officer has a reasonable suspicion,[1] supported by specific articulable facts, that criminal activity has occurred or is about to occur. *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007). Besides being justified at its inception, a *Terry* stop "must be reasonably related in scope to the circumstances which justified the" initial interference. *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). An officer may not continue to detain a motorist once the purpose of the traffic stop is complete unless something that occurred during the stop caused the officer to have independent reasonable, articulable suspicion of criminal activity. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (*en banc*), *cert. denied*, 525 U.S. 1123 (1999)). In order to have reasonable suspicion for a stop based on a traffic violation, "a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of the law." *Hughes*, 606 F.3d at 316. When evaluating the validity of a *Terry* stop, courts consider the totality of the circumstances. *United States v. Smith*, 594 F.3d 530, 537 (6th Cir. 2010). "[I]f either the initial traffic stop or the scope and duration of the stop was unlawful, the evidence and statements obtained from that illegality must be excluded as 'fruit of the poisonous tree.'" *United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

Officer Jackson initially stopped Jones because he could not see a front or rear license plate

---

[1]Although the magistrate judge used the probable cause standard, we note that the correct standard for *ongoing* crimes is the lower reasonable suspicion standard. *United States v. Hughes*, 606 F.3d 311, 316 n.8 (6th Cir. 2010) (citing *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) ("a seizure for an ongoing violation of *any* crime – no matter how minor – is governed by the standard of reasonable suspicion, not probable cause," even though the probable cause standard applies to completed misdemeanors)).

on the vehicle in which Jones was a passenger. As Officer Jackson approached the car on foot, he saw the temporary plate properly affixed flush to the rear window. At this point, the purpose of the stop was complete. However, Officer Jackson continued approaching the vehicle, and when he was 6 to12 inches from the vehicle's rear window and shined his flashlight on the plate, he could read the plate's letters and numbers.[2] After reading the temporary plate, Officer Jackson resumed his approach due to his belief that the law required a license plate to be illuminated, on the rear bumper, and visible from the police vehicle as it is driving down the street. Even though this belief has no support in Ohio law, the stop will still be upheld if the license plate display was in fact unlawful for a different reason or if another violation justified the stop. During the motion-to-suppress hearing, Officer Jackson testified that he had no other reasonable suspicion that Jones or the vehicle was engaged in criminal activity. Therefore, the stop will be valid only if the license plate display in fact violated R.C. 4503.21.

When construing Ohio law, we must apply it according to controlling decisions of the Supreme Court of Ohio. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

---

[2] Officer Jackson's testimony was partially inconsistent. During the first motion-to-suppress hearing, Officer Jackson testified that the plate was "clear" from three feet away. During the second motion-to-suppress hearing, Officer Jackson testified that only the outline of the temporary tag was clear from three feet. He also testified that he was not shining a flashlight on the plate from three feet away. During the second hearing, the magistrate judge asked questions to clarify Officer Jackson's testimony regarding the distance from which he could read the temporary plate. Officer Jackson responded that he could not read the temporary plate until he was 6-12 inches from it; however, shortly before that testimony, he testified that he could read the plate from three feet away. Despite these inconsistencies, this court gives great deference to findings of fact that "are based on determinations regarding the credibility of witnesses." *Anderson*, 470 U.S. at 575. For a finding based on credibility determinations to be clearly erroneous, the story, if not contradicted by extrinsic evidence, must be "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.* Because a reasonable factfinder could credit Officer Jackson's testimony, we accept the district court's factual findings.

Because the Supreme Court of Ohio has not addressed what constitutes "plain view" under R.C. 4503.21, we may look to "the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule" to ascertain how it would decide the issue. *Id*. (citing *Grantham & Mann v. Am. Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)). Although decisions of Ohio's appellate courts do not bind this court, we should not disregard them unless "convinced by other persuasive data that [the Supreme Court of Ohio] would decide otherwise." *Id.* (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

In finding that Officer Jackson had probable cause to continue the stop, the magistrate judge stated that "[i]t is not clear from existing Ohio case law whether an unilluminated temporary tag in the rear window of a car whose letters and numbers can be read only from a distance of a foot or less and with the aid of a flashlight is in 'plain view' under [Ohio Revised Code §] 4503.21." The relevant portion of R.C. 4503.21 states:

> No person to whom a temporary license placard or windshield sticker has been issued for the use of a motor vehicle under section 4503.182 of the Revised Code, and no operator of that motor vehicle, shall fail to display the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle, or fail to display the windshield sticker in plain view on the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility.

R.C. § 4503.21(a).[3]

Contrary to the magistrate judge's finding, at the time of the stop it was clear from existing Ohio case law that an unobstructed and unilluminated temporary license plate affixed to a vehicle's

---

[3]The applicable City of Cleveland ordinance is virtually identical to R.C. § 4503.21. For purposes of this appeal, it is unnecessary to analyze each law separately.

rear window that was both visible and legible from the rear of the vehicle did not violate R.C. 4503.21. In addition, the Ohio Court of Appeals has squarely held that a properly affixed license plate that is only obscured by fog does not violate R.C. 4503.21 if the officer can read the plate. *See Ohio v. Cooke*, No. 98-L-160, 1999 WL 778378, at *1 (Ohio Ct. App. Sept. 24, 1999) (unpublished opinion). Although the government maintains that the license plate here should have been illuminated to be in compliance with R.C. 4503.21, the law does not impose such a requirement. *See Ohio v. Baumgartner*, No. L-98-1282, 1999 WL 375519, at *1 (Ohio Ct.App. June 11, 1999) (unpublished opinion) (R.C. 4503.21 does not make a motorist "responsible to light the area where [a temporary] tag is displayed so it will not be obstructed from view during the dark hours of the night and early morning.")

The magistrate judge cited, *inter alia*, *Ohio v. Keathley*, 562 N.E.2d 932 (Ohio Ct. App. 1988), to support its finding that Officer Jackson could still detain Jones after he viewed the temporary plate. In *Keathley*, an officer stopped a vehicle because dirt covered the registration sticker and the officer could not determine if the sticker was valid. *Id.* at 933. Although the officer could view the valid sticker as he approached the vehicle, he still detained the driver and eventually cited him for a suspended license. *Id.* The *Keathley* court affirmed the lower court's denial of defendant's motion to suppress on the ground that the officer had probable cause to continue the stop because the plate violated Troy Ordinances Section 335.10, which specified that "a license plate shall not be covered, obscured or concealed by any part or accessory of the vehicle, or by any foreign substance or material, and shall be readable in its entirety from left to right." *Id; see also Ohio v. Terry,* 719 N.E.2d 1046 (Ohio Ct. App. 1998) (temporary tag partially taped to rear window such that some of the numbers were concealed was not in compliance with R.C. 4503.21); *Ohio v. Colton,*

No. 20760, 2005 WL 2077785 (Ohio Ct. App. Aug. 19, 2005) (temporary tag at bottom of rear window that was not visible from the rear of the vehicle violated R.C. 4503.21.) (unpublished opinion); *Ohio v. Hanna,* No. WM-99-016, 2000 WL 262356 (Ohio Ct. App. Mar. 10, 2000) (license plate on front dashboard of vehicle that could not be read by the officer as he passed by violated R.C. 4503.21) (unpublished opinion).

The magistrate judge also cited this court's decision in *United States v. Elmore*, 304 F.3d 557 (6th Cir. 2002), for the proposition that "even if Officer Jackson lacked reasonable suspicion that a traffic violation was being committed *after* he approached the car on foot and discovered and read the temporary license plate, he could lawfully approach the driver and ask him questions." In *Elmore*, the officer stopped a vehicle because it did not have a visible license plate, but upon "very close inspection" the officer could "discern—and with some difficulty, read—through the car's heavily tinted rear window a temporary license tag." *Id*. The *Elmore* court stated that Ohio law requires that temporary plates displayed in the rear window be clearly visible and not obstructed by tinted windows. *Id.* Additionally, in *dicta* the Court stated that the officer:

> was *not* prohibited by the Fourth Amendment from conducting a search of the car once the initial purpose for pulling over the car, in this case to verify that the car had license tags, had been fulfilled…. [T]his circuit has repeatedly held that '[o]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot'…. Here the purpose of the stop plainly had not been completed, since the Officer had reason to believe that the display of the temporary tag was in violation of the law.

*Id.* at 561 n.1 (internal citations omitted).

In addition, the government cites *Ohio v. Lavalette*, No. WD-02-025, 2003 WL 1904394 (Ohio Ct. App. Apr. 18, 2003) (unpublished opinion), a case where an officer stopped a vehicle

because rust initially obstructed his view of the license plate but the officer was ultimately able to read the plate as he approached the vehicle. *Id*. at *1. The *Lavalette* court found the stop lawful partially because the rust on defendant's plate violated R.C. 4503.21. *Id.*

The cases relied on by the magistrate judge and the government make clear that R.C. 4503.21 holds drivers responsible for properly affixing their license plates and keeping them free from obstructions, such as rust or tinted covers.[4] However, R.C. 4503.21 does not mandate the impossible and force drivers to be responsible for elements outside of their control, such as a poorly lit street or fog. *Cooke*, 1999 WL 778378, at *4. It is not difficult to see that such an interpretation would make a driver's compliance with R.C. 4503.21 dependent upon the particular street he or she is on or the time of day he or she is driving. We have yet to find a single Ohio case that supports that interpretation of R.C.4503.21.

In the alternative, the magistrate judge found that even if Officer Jackson mistakenly believed that the temporary plate on Jones's vehicle violated R.C. 4503.21, "he had an objectively reasonable belief that the driver violated the law and could lawfully approach the driver and ask the driver questions." We disagree.

This court has not yet answered whether an officer's objectively reasonable mistake of law can establish reasonable suspicion for a search or seizure. We need not here because we find that

---

[4]A more recent Ohio Court of Appeals case, not cited by the district court or government, is similar to *Lavalette* and *Keathley*. In *Ohio v. Phillips*, No. 22918, 2009 WL 2106294, at *1 (Ohio Ct. App. July 17, 2009) (unpublished opinion), an officer stopped a vehicle for an obstructed temporary license plate where he could not read its plate due to a tinted license plate cover that was smudged with dirt and salt. Upon approaching the vehicle on foot, the officer was able to read the plate. *Id.* The court held that the officer had reasonable suspicion to continue the stop after reading the plate because the tinted license plate cover smudged with dirt and salt obstructed the license plate in violation of R.C. 4503.21.

the officer's belief that the license plate display in this case violated R.C. 4503.21 was not objectively reasonable.

Officer Jackson conceded that he was able to read the temporary plate in its entirety before interacting with the driver. However, Officer Jackson continued the stop because of his belief that the license plate had to be on the rear bumper, illuminated, and readable from his car as he drove down the street. This belief finds no support under Ohio case law or in the statute itself. Officer Jackson also believed that a rear window display of a temporary license plate was improper. Again, there is no basis for this belief as it directly contradicts the language of R.C. 4503.21. *See* R.C. 4503.21(a) ("no operator of that motor vehicle, shall fail to display the temporary license placard in plain view from the rear of the vehicle ***either in the rear window*** or on an external rear surface of the motor vehicle") (emphasis added). Further, Ohio case law explicitly contradicts Officer Jackson's belief that fog is an obstruction within the meaning of the statute. *See Cooke*, 1999 WL 778378, at *4. For these reasons, Officer Jackson's belief that the manner of displaying the license plate at issue violated R.C. 4503.21 was not objectively reasonable.

In sum, R.C. 4503.21 requires that a temporary plate be displayed "in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle" and not be "covered by any material that obstructs its visibility." The display in this case satisfied those requirements. [5] If not for the fact that Officer Jackson conducted the stop on a dark, winter night in

---

[5]The two most recent Ohio Court of Appeals decisions addressing the lawfulness of a traffic stop based on similar facts support this court's conclusion that Ohio courts would find that Officer Jackson lacked reasonable suspicion to detain appellant once he read the temporary plate. In *Ohio v. Lopez*, No. 93197, 2010 WL 2202890 (Ohio Ct. App. June 3, 2010) (unpublished opinion), the court found an officer lacked reasonable suspicion to continue the stop of a vehicle based on a lack of license plates once the officer was able to see a temporary plate affixed flush to the rear window. Although the officer could see the plate upon exiting his car, the officer said the plate was not legible

an area that was poorly illuminated, he likely would have had no difficulty reading the plate. As Officer Jackson did not obtain independent reasonable suspicion that the vehicle was engaged in criminal activity after reading the plate, and Officer Jackson's belief that the temporary plate violated Ohio law was not objectively reasonable, the continued detention of the vehicle and subsequent search were unlawful.[6]  Accordingly, the firearm that Officer Jackson found while conducting the unlawful search should have been suppressed. *United States v. See*, 574 F.3d 309, 314 (6th Cir. 2009) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

IV.

For the foregoing reasons, we REVERSE the district court's denial of Jones's motion to suppress, VACATE Jones's conviction, and REMAND the case for further proceedings consistent with this opinion.

---

because the rear window was angled, causing a glare. *Id.* at *1. The *Lopez* court found the temporary plate in compliance with R.C. 4503.21 because it was affixed flush to the rear window and not obstructed in any way. *Id.* at *4. In *Lakewood v. Shelton*, No. 95746, 2011 WL 3860510, at *3-4 (Ohio Ct. App. Sept. 1, 2011) (unpublished opinion), the court compared *Lopez* and *Phillips* and found "[the] case to be similar to *Lopez* and distinguishable from *Phillips*." In *Shelton*, the officer stopped a vehicle whose license plate was illegible because it was covered with snow. *Id.* at *1. Upon approaching the car, the officer could read the plate but could not recall whether he brushed the snow off or if it fell off. *Id.* The court held that the stop was unlawful because there was no reason to detain defendant after the officer could read the license plate. *Id.* at *4.

[6]Under Ohio law, once a police officer no longer has reasonable suspicion that a vehicle does not have the proper tags, the police can explain the reason for the initial stop to the driver but cannot ask for the driver's license or otherwise further detain the vehicle. *Ohio v. Chatton*, 463 N.E.2d 1237, 1240-41 (Ohio 1984).