# IN THE COURT OF APPEALS OF IOWA

No. 18-0061
Filed February 6, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT WILLIAM HAMPTON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, District Associate Judge.

Robert Hampton appeals his conviction and sentence for possession of methamphetamine. **CONVICTION VACATED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

Robert Hampton was convicted of misdemeanor possession of a controlled substance, methamphetamine, in violation of Iowa Code section 124.401(5) (2017). In this direct appeal, Hampton contends the district court erred in denying his motion to suppress evidence obtained as a result of an allegedly unconstitutional traffic stop and roadside detention. Hampton also contends his sentence is illegal because the district court ordered Hampton to pay the costs for an associated, but dismissed, criminal case.

The Fourth Amendment of the United States Constitution safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Article I section 8 "of the Iowa Constitution is substantially identical in language to the Fourth Amendment[,]" and both provisions are "usually deem[ed] . . . identical in scope, import, and purpose." *State v. Kreps*, 650 N.W.2d 636, 640-41 (Iowa 2002) (citing Iowa Const. art. I, § 8; *State v. Scott*, 409 N.W.2d 465, 467 (Iowa 1987)). The key inquiry of any search-and-seizure claim is reasonableness under the circumstances presented. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" (citation omitted)).

Although the touchstone of any search-and-seizure claim, whether arising under federal or state law, is reasonableness under the circumstances presented, Hampton correctly notes that "[e]ven 'in . . . cases in which no substantive distinction [appears] between state and federal constitutional provisions, we

reserve the right to apply the principles differently under the state constitution compared to its federal counterpart.'" *State v. Gaskins*, 866 N.W.2d 1, 6 (Iowa 2015) (quoting *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011)). Of course, "our independent authority to construe the Iowa Constitution does not mean that we generally refuse to follow the United States Supreme Court decisions." *State v. Short*, 851 N.W.2d 474, 490 (Iowa 2014). "Rather, it merely assures that we 'exercise . . . our best, independent judgment of the proper parameters of state constitutional commands,' as we are constitutionally required to do." *Gaskins*, 866 N.W.2d at 7 (quoting *Short*, 851 N.W.2d at 490).

In exercising our independent judgment, we may determine that the state constitution provides lesser or greater protection than its federal counterpart. This was explained by former Oregon Supreme Court Justice Hans Linde, widely considered the godfather of independent state constitutionalism:

> The right question is not whether a state's guarantee is the same as or broader than its federal counterpart as interpreted by the Supreme Court. The right question is what the state's guarantee means and how it applies to the case at hand. The answer may turn out the same as it would under federal law. The state's law may prove to be more protective than federal law. The state law also may be less protective. In that case the court must go on to decide the claim under federal law, assuming it has been raised.

Hans A. Linde, *E Pluribus—Constitutional Theory and State Courts*, 18 Ga. L. Rev. 165, 179 (1984). This understanding of the interplay between the federal constitution and the state constitutions was adopted by former Supreme Court Justice John Paul Stevens. *See Massachusetts v. Upton*, 466 U.S. 727, 738 (1984) (Stevens, J., concurring). The Court of Criminal Appeals of Texas explained the issue in the search-and-seizure context:

We understand that our holding means that Section 9 of our Bill of Rights does not offer greater protection to the individual than the Fourth Amendment to the United States Constitution, and it may offer less protection. But our holding is the construction that is faithful to the Constitution which our people have adopted, and it is our duty to interpret that Constitution independent of the interpretations of federal courts. *Heitman v. State*, [815 S.W.2d 681 690 n.22 (Tex. Crim. App. 1991)].

As the Court of Appeals noted in this case, *Heitman* [*v. State*] does not mean that the Texas Constitution cannot be interpreted to give less protection than the federal constitution. It only means that the Texas Constitution will be interpreted independently. *See Hulit v. State*, 947 S.W.2d [707, 709 (Tex. App. 1997)]. Its protections may be lesser, greater, or the same as those of the federal constitution.

In *Heitman*, we repeated the dictum of our sister court: "The federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. [] 1986). With all respect to our Sister Court, we think its metaphor is wrong. The state constitution and the federal constitution are not parts of one legal building; each is its own structure. Their shapes may be different, as may their parts. Each may shield rights that the other does not. The ceiling of one may be lower than the floor of the other. Because of the Supremacy Clause of the United States Constitution, a defendant who is entitled to claim [] the protection of a federal provision may receive a greater protection from that floor than the greatest protection that the ceiling of the Texas Constitution would give him. But that does not mean that the Texas Constitution has no ceilings that are lower than those of the federal constitution. *See Welchek v. State*, [] 247 S.W. 524 ([Tex. Crim. App.] 1922) (Article I, Section 9 creates no exclusionary rule similar to that found in [the] Fourth Amendment for federal prosecutions).

In our holding there is no violation of the Supremacy Clause of Article VI of the United States Constitution.

> State courts are the final interpreters of state law even though their actions are reviewable under the federal constitution, treaties, or laws. The supreme court of a state is truly the highest court in terms of this body of law and it is not a "lower court" even in relation to the Supreme Court of the United States. It must follow the Supreme Court's rulings on the meaning of the Constitution of the United States or federal law, but it is free to interpret state laws or the state constitution in any way that does not violate principles of federal law.

> John E. Nowak, Ronald D. Rotunda, J. Nelson Young, 1 Treatise on Constitutional Law 31 (1986). We do not make any holding about the appellant's rights under federal law. In this case, the appellant has chosen not to seek any shelter in the federal constitution. (In our architectural metaphor, he may not be able to fit his facts under the federal ceiling.) This case has called on us to decide whether our constitution will give him the shelter he wants. It does not.
>
> The Supremacy Clause means that, in practical terms, persons will always be able to avail themselves of the greater right. This is very important to litigants and their counsel, who are naturally and properly result-oriented. But it does not mean that a court, faithfully interpreting state laws, can only find in them protections that equal or exceed federal laws.

*Hulit v. State*, 982 S.W.2d 431, 436–37 (Tex. Crim. App. 1998) (en banc) (altered for readability).

With that understanding, we directly address Hampton's claims. Hampton asserts numerous constitutional challenges to the traffic stop and roadside detention during which methamphetamine was found in his possession. He contends as follows: (1) ordering a driver to exit a lawfully stopped vehicle violates the state constitution; (2) ordering a driver to sit in the patrol vehicle during a traffic stop violates the federal and state constitutions; (3) the Iowa Constitution does not allow a law-enforcement official to request a driver to consent to a pat-down search in the absence of reasonable suspicion; (4) the Iowa Constitution requires a law-enforcement official to advise of the right to decline consent under a "knowing and voluntary" standard for consent searches; (5) even under a totality-of-the-circumstances test for consent searches, Hampton's consent was not voluntary; and (6) the officer unlawfully expanded the scope of the pat-down search by removing items from Hampton's pockets.

On de novo review, we find the district court erred in denying the motion to suppress evidence. *See State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017)

(setting forth the standard of review). Hampton does not dispute the traffic stop was lawful. Upon initiating the traffic stop, the deputy requested Hampton exit the vehicle. Hampton exited the vehicle, and the deputy requested consent to conduct a pat-down search. Hampton consented to the pat-down search but only for weapons. Under the totality of the circumstances, we find the consent was voluntary. *See State v. Lowe*, 812 N.W.2d 554, 572 (Iowa 2012) (stating consent may be express or implied and is determined by a consideration of the totality of the circumstances). However, when consent to a search is limited, officers are bound by those limitations. *See State v. McConnelee*, 690 N.W.2d 27, 31 (Iowa 2004). The deputy went beyond the consensual scope of a weapons search when he manipulated the contents of Hampton's pocket and removed a pill container.

While the scope of a consensual search may be limited, it also may be expanded when an additional exception to the warrant requirement is applicable. *See id.* at 32. When conducting a pat-down search for weapons, officers are not required to ignore immediately apparent contraband and may remove it pursuant to the plain-feel doctrine. *See Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993) (permitting an officer to seize an object during a weapons pat down when it is immediately identifiable as contraband). However, the plain-feel doctrine does not apply when an officer must manipulate or squeeze an object in order to identify it as contraband. *See State v. Harriman*, 737 N.W.2d 318, 320 (Iowa Ct. App. 2007). Here, the deputy could not immediately identify the container as containing contraband to justify expanding the scope of the search under the plain-feel doctrine. A video recording of the search shows the deputy manipulating the container in Hampton's pocket as the deputy inquires about its contents, and the

deputy conceded at the motion-to-suppress hearing that he could not identify the container until he removed it from Hampton's pocket. We note the deputy immediately identified a shortened straw in Hampton's pocket as drug paraphernalia; its discovery is not at issue in this appeal for conviction of possession of methamphetamine.

The State argues the expansion of the search's scope was justified as a search incident to arrest or under the inevitable-discovery doctrine because the deputy's immediate identification of the straw as drug paraphernalia gave the deputy probable cause to arrest Hampton. A search incident to arrest "allows a police officer 'to search a lawfully arrested individual's person and the immediately surrounding area without a warrant.'" *State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008)) (quoting *United States v. O'Connell*, 408 F. Supp.2d 712, 723 (N.D. Iowa 2005)). The State reasons the search of Hampton's pocket was sufficiently contemporaneous to his arrest for possession of the straw to be considered a lawful search incident to arrest. *See State v. Peterson*, 515 N.W.2d 23, 24 (Iowa 1994). It also reasons if the search was not a lawful search incident to arrest, the container and its contents would have been inevitably discovered in a later, lawful search incident to arrest. The inevitable-discovery doctrine permits the admission of evidence obtained illegally that would have been inevitably discovered through some lawful means. *See State v. Seager*, 571 N.W.2d 204, 211 (Iowa 1997).

We first note none of these arguments were advanced in the district court. In any event, the State's contentions are factually fatally flawed. There is no evidence in the record indicating the deputy intended to arrest Hampton upon discovery of the straw alone. In fact, the recording of the stop reveals the deputy

only placed Hampton under arrest after the deputy removed the container from Hampton's pocket and Hampton admitted the container contained drugs. The deputy also indicated his decision to arrest Hampton was predicated on the discovery of the drugs. The deputy made no reference to the straw when explaining his obligation to arrest Hampton. Because we cannot say the deputy would have arrested Hampton based on the discovery of the straw alone, we cannot justify the intrusion into Hampton's pockets as a search incident to arrest or under the inevitable-discovery doctrine.

The deputy's search of Hampton's pockets and the container contained therein went beyond the scope of the consensual pat-down. The manipulation of the container, coupled with the deputy's admission he did not know what it was, removes this case from the operation of the plain-feel doctrine. The district court erred in denying Hampton's motion to suppress evidence.

Because we conclude the district court erred in ruling on the motion to suppress evidence, we vacate the defendant's conviction and remand this matter for further proceedings. We need not address the remainder of the defendant's arguments.

**CONVICTION VACATED AND REMANDED.**