# IN THE COURT OF APPEALS OF IOWA

No. 17-0817
Filed June 20, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL JOE KILPATRICK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David N. May, Judge.


        A defendant appeals four convictions for drug-related crimes, challenging the legality of an automobile search.   **AFFIRMED.**


        Andrew J. Dunn of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Des Moines police stopped Michael Kilpatrick as he drove a car registered to his brother, who had an outstanding arrest warrant. During the investigatory stop, an officer frisked Kilpatrick and removed heroin from his pocket. Another officer found a backseat passenger in possession of drug paraphernalia. A subsequent search of the car's glove box unearthed methamphetamine and cocaine—leading to Kilpatrick's convictions on four drug-related felonies. Kilpatrick appeals, challenging the extension of the stop after its initial purpose was resolved, questioning the State's reliance on the "plain-feel" exception to the warrant requirement, and arguing the glove-box search was not justified under the search-incident-to-arrest or automobile exceptions.

Because police had not determined the identity of the car's occupants before the pat downs, the officers did not unduly prolong the stop. The police legally seized contraband from Kilpatrick based on the plain-feel doctrine. The driver's possession of heroin and the passenger's possession of drug paraphernalia provided probable cause to search the car. Accordingly, we affirm.

## I.      Facts and Prior Proceedings

One night in June 2016, Michael Kilpatrick borrowed the Pontiac Bonneville registered to his brother, James Kilpatrick, who was wanted for violating his parole. On routine patrol, a pair of Des Moines police officers ran the Pontiac's plates, discovered an active warrant for the registered owner's arrest, and signaled for the driver to pull over. As the Pontiac came to a stop, Officer Steven Bjurstrom saw the driver reach toward the center console and passenger side of the car. The movements concerned the officer—"[p]eople typically will hide weapons or retrieve

weapons to attack or plan to attack or try to hide things, illegal substances, or things they don't want to be found."

Both officers approached the Pontiac; Officer Bjurstrom spoke with the driver while Officer Ryan Neumann stood at the rear window on the passenger side. Officer Bjurstrom asked Kilpatrick to "hop out" of the car and then checked his driver's license, which identified him as Michael, not James. Kilpatrick also told the officer that the backseat passenger, Tyler Jennings, was not the car's registered owner. Officer Bjurstrom moved Kilpatrick to the rear of the Pontiac where the officer patted him down. The officer found no weapons, but detected a "crackle" that he believed to be consistent with drug packaging, and pulled a small knotted baggie holding heroin from Kilpatrick's cargo-pants pocket.

Meanwhile Officer Neumann identified Nicole Kilpatrick as the female passenger in front seat. As Officer Bjurstrom patted down the driver, Officer Neumann noticed Jennings was sitting on a syringe. The officer said he "initially observed [the syringe] between [Jennings's] legs" and recovered it from the seat after the passenger was removed from the car. Officer Neumann found another syringe and a metal spoon with white residue in Jennings's pants pockets.

All three occupants sat on the curb while police searched the Pontiac. Officer Bjurstrom unlocked the glove box with the ignition key and found two types of illicit drugs inside a black zippered pouch. According to a report from the Iowa Division of Criminal Investigation, the pouch held 44.5 grams of methamphetamine and 5.1 grams of cocaine salt. Michael Kilpatrick can be heard on the police dash-cam video admitting the drugs belonged to him.

In a four-count trial information, the State charged Kilpatrick with (1) possession of methamphetamine, in excess of five grams, with intent to deliver, a class "B" felony, in violation of Iowa Code section 124.401(1)(b)(7) (2016) as a second or subsequent offense; (2) failure to affix a tax stamp to those drugs, a class "D" felony, in violation of sections 453B.3 and 453B.12; (3) possession of cocaine with intent to deliver, a class "C" felony, in violation of section 124.401(1)(c)(2)(b) and (d), as a second or subsequent offense; and (4) possession of heroin, a class "D" felony, as a second or subsequent offense.

Kilpatrick moved to suppress the drugs. His series of motions did not contest the basis for the traffic stop but raised multi-tiered challenges to the police conduct after the occupants told officers that registered owner James Kilpatrick was not present. The district court refused to suppress the evidence. Kilpatrick waived his right to a jury and agreed to a bench trial on the stipulated minutes of evidence. The district court found Kilpatrick guilty on all four counts and sentenced him to an indeterminate thirty-five-year prison term with a mandatory minimum of one-third before parole eligibility. Kilpatrick now appeals, renewing his objections to the search under both the federal and state constitutions.

## II.     Scope and Standard of Review

Because Kilpatrick is challenging the denial of his motion to suppress based on an alleged violation of his state and federal constitutional rights, we consider the case de novo. *See State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017). De novo review means looking at the entire record and forming "an independent evaluation of the totality of the circumstances." *Id.* (quoting *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017)). We defer to the district court's fact findings,

especially its assessment of witness credibility, but we are not bound by those findings. *Id.*

### III. Analysis of Search Issues

Kilpatrick advances a series of cascading complaints concerning the officers' actions after the investigatory stop. We will address each instance of police conduct in the order it occurred—beginning with the extension of the traffic stop, continuing through the pat down searches of Kilpatrick and Jennings, and concluding with the search of the locked glove box.

***Prolonging a valid traffic stop***. Both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution require a traffic stop to be supported by probable cause or reasonable suspicion. *See State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). Here, the Des Moines patrol officers had reasonable suspicion to stop the Pontiac to investigate whether the driver was registered owner James Kilpatrick, who was flagged by their computer system as having a pending arrest warrant. *See State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017) (acknowledging no dispute officer initially had sufficient reasonable suspicion under both constitutions to initiate a traffic stop where registered owner had a suspended driver's license); *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010) (upholding stop where officer was unaware of any circumstances indicating registered owner was not driver).

But a seizure arising from a traffic violation sanctions the police to investigate only "that violation." *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). Such a seizure is more akin to a *Terry* stop than a formal arrest. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (citing *Berkemer v.*

*McCarty*, 468 U.S. 420, 439 (1984) (citing *Terry v. Ohio*, 392 U.S. 1 (1968))). An officer "may conduct certain unrelated [license and warrant] checks during an otherwise lawful traffic stop" but "may not do so in a way that prolongs the stop" without the reasonable suspicion required to detain an individual. *In re Pardee*, 872 N.W.2d 384, 393 (Iowa 2015) (quoting *Rodriguez*, 135 S.Ct. at 1615).

When the stop is aimed at investigating the registered owner of the vehicle and an officer immediately determines the driver is not the registered owner, the officer cannot detain the driver for any additional inquires. *See Coleman*, 890 N.W.2d at 301(holding article I, section 8 required officer to allow male driver to go on his way "without further ado" when the stop was premised on the fact female owner had a suspended driver's license). Kilpatrick contends *Coleman* governs his case and, once Officer Bjurstrom saw from his license that he was not James, no basis existed for extending the stop and conducting the pat down.

Contrary to Kilpatrick's contention, *Coleman* did not dictate a quick retreat by the officers here. *Coleman* only applies if outward attributes make it obvious that the gender, race, or age of the driver or other occupants of the stopped vehicle do not match the identity of the registered owner, who is the focus of the investigation. *See id.* at 288 (noting parties did not dispute that once officer "determined driver was a male, the reasonable suspicion that triggered the stop was no longer present"). The Des Moines police had not yet resolved the identity of the male occupants of the Pontiac when the officers conducted their pat downs. The officers could reasonably infer James Kilpatrick would be the driver or passenger in his own car. *See Vance*, 790 N.W.2d at 781. Michael Kilpatrick and Jennings, both young white men, generally matched the description of James

Kilpatrick in the computer database. In the officers' experience, suspects are not always truthful about their identities. Under these circumstances, the officers were entitled to extend the stop long enough to resolve any ambiguity concerning the occupants' identities. We find no violation under the Fourth Amendment or article I, section 8.

*Pat downs and plain feel*. Kilpatrick next argues Officer Bjurstrom "improperly reached into [his] pocket and pulled out a very small baggie of heroin" after patting him down and finding no weapons. At the suppression hearing, Bjurstrom testified he was checking Kilpatrick's waistband and pockets for weapons by brushing his hand over the top when he "felt what was consistent—hear it like it was a crackle and consistent with drug packaging, or plastic wrapping, in his coin pocket." The officer "presumed" the item to be "plastic wrapped around a powdered, compressed substance" and found "a small knotted plastic" containing .24 grams of heroin. On appeal, Kilpatrick questions the credibility of the officer's account of hearing a "crackle" when the street was "humming" during the traffic stop.

Officers may seize contraband without a warrant following a *Terry* search for weapons if the object's "contour or mass makes its identity immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993) (recognizing a "plain-feel" exception to the warrant requirement). Here, the district court credited Officer Bjurstrom's testimony that the "physical sensation" of the item in Kilpatrick's pocket provided probable cause to believe it was narcotics. Deferring to the district court's credibility finding, we find the seizure of the heroin fell under the plain-feel doctrine. *See State v. Harriman*, 737 N.W.2d 318, 320–21 (Iowa Ct. App. 2007)

(finding because officer was convinced item was contraband without manipulating it, item was properly discovered under plain-feel exception to warrant requirement); *see also State v. Carey*, No. 12-0230, 2014 WL 3928873, at *6 (Iowa Ct. App. Aug. 13, 2014) (upholding search where officer testified to "very distinct feel" of knotted baggie of marijuana).

But even if Officer Bjurstrom's seizure of the heroin from Kilpatrick's pocket exceeded the bounds of the plain-feel exception, Officer Neumann's nearly simultaneous sighting of drug paraphernalia near passenger Jennings in the backseat provided independent probable cause to believe additional narcotics could be located in the Pontiac. Officer Neumann testified Jennings was trying to hide a syringe by sitting on it before the officer ordered him out of the car.[1] During a pat down of Jennings, the officer discovered a second syringe and a metal spoon bearing drug residue. Officer Neumann recognized these items as instruments for ingesting illegal drugs.

The heroin found in the driver's pocket and the drug paraphernalia appearing in plain view on the backseat—considered separately or in combination—provided probable cause to search the glove box. *See State v. Edgington*, 487 N.W.2d 675, 678 (Iowa 1992) (explaining probable cause for vehicle search can be established by officers' discovery of other contraband).[2]

---

[1] On appeal, Kilpatrick questions the credibility of the police testimony concerning the syringe, purportedly in plain view, asserting "[i]f there *were* a syringe as Neumann claimed, sitting on the back seat, there would have been a law enforcement photo evidencing its location." The district court made a factual finding that the officer saw Jennings "seated on a syringe." We give weight to that factual finding.

[2] Kilpatrick contends no probable cause existed for the vehicle search because Officer Bjurstrom testified he had decided before finding the heroin that he would search based on the driver's "furtive movements" when pulled over and "the needle observed inside the vehicle." Because we assess a police officer's conduct based on an objective standard,

***Automobile search.*** As a last point, Kilpatrick insists that after finding the heroin and drug paraphernalia, the officers had plenty of time to apply for a warrant to search the Pontiac. Kilpatrick attacks the police intrusion into the locked glove box, asserting it was not justified by the warrant exceptions for a search incident to arrest under *State v. Gaskins*, 866 N.W.2d 1 (Iowa 2015), or based on the mobility of the automobile under *State v. Storm*, 898 N.W.2d 140 (Iowa 2017). Kilpatrick contends, "[T]he State was required to obtain a warrant before searching the vehicle, the locked glove box, and the black zipper pouch."

The State counters that "this is not a search incident to arrest case." Rather, the State's theory both in the trial court and on appeal is that the police acted under the automobile exception in entering the glove box. *See United States v. Ross*, 456 U.S. 798, 816, 823 (1982) (holding "the exigencies that allow the police to search the entire automobile without a warrant support the warrantless search of every container found therein" (quoting *Robbins v. California*, 453 U.S. 420, 435 (1981) (Powell, J., concurring))).

Recently faced with a challenge to the continuing viability of the automobile exception under the state constitution, our supreme court reiterated, "The inherent mobility of motor vehicles satisfies the exigent-circumstances requirement." *Storm*, 898 N.W.2d at 145 (citing *State v. Holderness*, 301 N.W.2d 733, 737 (Iowa 1981)). Because the *Storm* majority elected "to retain the automobile exception, consistent with our precedent, federal caselaw,[3] and the overwhelming majority

---

we are not bound by the officer's subjective view of probable cause. *See State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006).

[3] Under the Fourth Amendment, the United States Supreme Court has upheld automobile searches where an officer has probable cause but no warrant because of the "ready

of other states," *id. at* 142, we affirm the district court's denial of Kilpatrick's motion to suppress. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

**AFFIRMED.**

---

mobility" and "pervasive regulation" of vehicles. *Collins v. Virginia*, ___ U.S. ___, ___, 2018 WL 2402551, at *4 (2018).