# IN THE COURT OF APPEALS OF IOWA

No. 23-1771
Filed July 2, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONNA LEE COX,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marion County, Charles C. Sinnard,

Judge.


        A defendant appeals the denial of her motion to suppress. **AFFIRMED**.


        Jesse A. Macro, Jr. (argued) of Macro Law, LLP, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino (argued),

Assistant Attorney General, for appellee.


        Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

Donna Cox was charged with possession of controlled substance (methamphetamine) after officers discovered methamphetamine and drug paraphernalia on her person and in her car. The drug investigation yielding evidence of the possession of methamphetamine started as a traffic stop for a broken taillight and crossing the center line while driving, but after a canine alerted to the presence of an illicit substance, officers searched Cox's vehicle. Cox argues that officers impermissibly prolonged the traffic stop by implementing a "systematic approach" where "the canine officer intentionally delays the issuance of tickets by calling another officer to the scene of traffic violation to complete the writing or paperwork required for a ticket, so the initial officer can unlawfully extend the stop in an attempt to gain probable cause to search the vehicle."

After review of the record, we find Officers Skyler Verros and Joseph Weppler did not impermissibly extend the traffic stop. Thus, we affirm the denial of the motion to suppress.

**Background Facts and Proceedings.**

Cox claims a drug investigation incident to a traffic stop, where probable cause to search was established by a canine free air sniff, violated her state and federal constitutional rights. The district court summarized the pertinent facts as follows:

> On June 16, 2022 Sergeant Skyler Verros ("Verros") of the Knoxville Police Department was on routine patrol. In addition to being a Sergeant, Verros is also a K9 handler. Verros' K9 partner is named Rosko. Rosko and Verros have been partners for approximately two (2) years. . . . Rosko is a passive alert K9. He indicates the detection of narcotics by sitting during a deployment.

On June 16th, . . . Verros was patrolling within the city limits of Knoxville, when he observed a silver minivan traveling in the opposite direction of him. As the vehicles drove past each other, Verros observed the driver of the minivan, who Verros knew to be Jason Vaughn. Verros then turned his vehicle around to follow the minivan and run an administrative check of the vehicle.

Before Verros could run the check, he observed two motor vehicle violations, a defective third break light, and the driver operating the vehicle in the opposite lane of traffic. Upon viewing these violations, Verros activated the lights on his patrol car and initiated a traffic stop of the vehicle. During the suppression hearing, several questions were directed to Verros, by counsel for the defendants, about his reason for following the vehicle.

Verros admitted that he had decided to follow the vehicle to see if he could develop either probable cause or reasonable suspicion sufficient to stop the vehicle. Verros had previously explained at a deposition, and subsequently confirmed at the suppression hearing, that he had developed a system to deploy his K9 following a traffic stop, to check for the presence of narcotics. Based on prior knowledge of Vaughn being associated with illegal narcotics, Verros made the determination upon observing Vaughn driving the minivan, that Verros would follow the vehicle and see if he could develop grounds to stop the vehicle and deploy K9 Rosko.

After stopping the minivan and approaching the driver's side of the vehicle, Verros confirmed Vaughn was driving. Verros also observed . . . Cox sitting in the passenger seat of the van. Verros requested the license of Vaughn and registration and proof of insurance for the vehicle. Vaughn was able to produce a valid driver's license, but after approximately three (3) to four (4) minutes of searching, Cox could not come up with current proof of insurance for the vehicle. Verros then returned to his patrol car to issue a warning for one of the traffic violations and a citation for no insurance.

Pursuant to Verros' system, he had called [Weppler] to come to the scene, at the beginning of the traffic stop. Weppler arrived as Verros was finishing the warning but prior to completing the citation for no insurance. Weppler then took over issuing the no insurance citation while Verros deployed Rosko to sniff for the presence of narcotics around the exterior of the vehicle. Rosko made several passes around the vehicle before finally giving an indication for the presence of narcotics in the vehicle. Weppler was finishing the citation for no insurance at approximately the same time as Rosko indicated the presence of narcotics. The elapsed time from the stop of the minivan to the time Rosko established probabl[e] cause for the presence of a controlled substance, was approximately eleven (11) minutes.

After Rosko's signal, Verros and Weppler asked Cox to step outside the vehicle so the officers could search the vehicle for methamphetamine. Weppler found a pipe with methamphetamine residue in Cox's front pocket. During a search of the vehicle, officers found methamphetamine and methamphetamine residue in the vehicle. Both Cox and Vaughn were arrested and charged.

Cox filed a motion to suppress, arguing the search of her vehicle incident to the traffic stop violated her rights under article I, section 8 of the Iowa Constitution and the Fourth Amendment of the United States Constitution. The district court denied her motion to suppress, finding the search did not violate Cox's state or federal constitutional rights.

Cox proceeded to an agreed-upon trial on the minutes where the district court found her guilty of possession of controlled substance (methamphetamine), first offense, a serious misdemeanor. Cox received a sentence of 120 days in jail, with all 120 days suspended, and one year of probation as part of a global judgment entry for this charge and five other unrelated offenses. She was also required to pay fines and surcharges on each of her six criminal convictions.

Cox appeals the denial of her motion to suppress.

**Standard of Review.**

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018) (citation omitted). What constitutes the prolonging of a traffic stop must be determined by "evaluat[ing] the totality of the circumstances as shown by the entire record." *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016) (citation omitted). In

fact, "[e]ach case must be evaluated in light of its unique circumstances." *Coffman*, 914 N.W.2d at 244 (citation omitted).

**Discussion.**

Cox contends that both the Iowa and United States Constitutions support her assertions, but she fails to delineate any difference between the standards in state and federal jurisprudence. "Article I, section 8 guarantees the right to be secure against unreasonable searches and seizures, and it contains language nearly identical to the Fourth Amendment counterpart." *State v. Salcedo*, 935 N.W.2d 572, 577 (Iowa 2019). "We generally interpret the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment because of their nearly identical language." *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019) (cleaned up). "When both federal and state constitutional claims are raised, we may, in our discretion, choose to consider either claim first in order to dispose of the case, or we may consider both claims simultaneously." *Salcedo*, 935 N.W.2d at 577 (citation omitted). Because Cox does not make independent state and federal claims, we consider her constitutional claims simultaneously.

Cox begins her challenge by asserting the stop of her vehicle was "pretextual," yet she acknowledges that the motivation of the officer stopping the vehicle is not controlling in determining whether probable cause existed. *See Brown*, 930 N.W.2d at 854 ("[W]e made clear that an officer's ulterior motive for making the arrest does not limit the right to conduct a search incident thereto under the Iowa Constitution if probable cause exists for an arrest to be made." (cleaned up)). From that statement, Cox's focus turns to the process Verros used to allow

for a drug dog sniff. Cox seems to recognize that the initial traffic stop was permissible. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *Salcedo*, 935 N.W.2d at 577 ("It is well settled that a traffic violation, however minor, gives an officer probable cause to stop a motorist and is therefore a reasonable seizure." (cleaned up)). And she does not contest that a free air dog sniff is allowed without independent reasonable suspicion if the sniff does not prolong the traffic stop. *See generally Illinois v. Caballes*, 543 U.S. 405 (2005); *State v. Arrieta*, 998 N.W.2d 617, 619 (Iowa 2023) ("Officers are allowed to use a drug dog to conduct a 'free air sniff' around the outside of a vehicle during a valid traffic stop without any suspicion that the vehicle contains drugs under the premise that the driver has no expectation of privacy in the air outside the vehicle."). From our review, the traffic violation was observed on Verros's car camera video, making the initial stop justified. So we turn to Cox's argument over the permissibility of a system she characterized as the initial officer's systematic approach.

This initial officer systematic approach, as described by Cox, involves a canine officer purposefully stalling a traffic stop while writing citations and calling for a second officer, who responds and takes over writing citations, thereby freeing the initial canine officer to conduct a free-air sniff. As Cox notes, "[s]imply put, the initial officer is attempting [to] extend a traffic stop without separate probable cause other than the original traffic offenses by intentionally slowing down the ticket issuing process to permit the dog sniff search." Cox urges that this unconstitutional system need to be "stopped by the courts." The suppression court also expressed

reservations about the process used by Verros at the overall complexion of the stop as it

> would offer in speculation that the current state of the law [that the motivation of the officer is irrelevant with a valid traffic stop] may not always be the case. Given recent societal focus on profiling, and even some recent legislative efforts to prevent such conduct, it is not beyond this Court's imagination that in the not-too-distant future there could be a shift of focus to an officer's subjective reasons for singling out an individual for investigation. Lawmakers may come to recognize that an "ends justifies the means" approach to investigations may cause an otherwise well-intentioned investigation to be tainted by fixed, preconceived ideas that a person is guilty, before any proof is adduced. That shift in focus could be expedited by law enforcement's systematic and routine use of relying on minor objective reasons for investigation, to support subjective hunches based on a profile. But that is a discussion for another time and in another arena.

Cox contends that the initial officer systematic approach violates the precept that "when the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion" the officer must allow a motorist to leave. *State v. Coleman*, 890 N.W.2d 284, 301 (Iowa 2017). And, Cox argues, the process used here delayed and extended the stop. We start with this last point.

**The Initial Officer Systematic Approach.**

We turn to Cox's central focus that the scheme used by Verros results in a constitutional problem that should trigger the exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 144 (2009) ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent [police] conduct, or in some circumstances . . . systemic negligence."). As an issue of first impression, Cox argues the system—which includes the exchange of Weppler for Verros when writing a citation—constitutes the prolonging of a traffic stop. She contends, "The sole purpose of calling a second officer to actually write the ticket is to circumvent

the limits placed on the officers by" article I, section 8 of the Iowa Constitution and the Fourth Amendment to the Federal Constitution. But because the officer swap did not cause an impermissible delay and is consistent with activities found in a reasonable traffic investigation, we find no violation.

As for the pertinent facts, Verros and Weppler were efficient in swapping places in the patrol vehicle. Weppler appeared alongside the vehicle; Verros mentioned he had just completed the warning for the traffic offense but had not completed the citation for no insurance. Verros then promptly left the vehicle and Weppler picked up where Verros left off, inputting information on the patrol laptop to complete the citation. Leaving the area around the patrol vehicle, Verros completed a canine free air sniff with canine Rosko. Weppler finished scanning in a signature to the citation, completing the citation, mere seconds after Rosko finished.

An officer may not "earn bonus time to pursue an unrelated criminal investigation" by completing traffic-related offenses expeditiously. *Rodriguez v. United States*, 575 U.S. 348, 357 (2015). And "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" *In re Pardee*, 872 N.W.2d 384, 393 (Iowa 2015) (alteration in original) (quoting *Rodriguez*, 575 U.S. at 356–57).

In this matter, as part of our de novo review, we reviewed both Verros's and Weppler's bodycam footage for any signs of purposeful and impermissible sluggishness. Both Verros and Weppler added information into a citation template

without obvious procrastination or delay. Weppler struggled to scan in a signature to the citation, completing what appeared to be this final task seconds after canine Rosko completed his effort. The district court noted that the entire stop took approximately eleven minutes; on our review of the body camera footage, Weppler's completion of the ticket took just short of four minutes and canine Rosko's work took approximately two minutes during the time Weppler finished the citation. Verros conducted the dog sniff during the time Weppler was still completing the citation. We find no evidence that Weppler was stalling, as he worked dutifully to complete the citation. We add, although the two officers worked on the warning and citation successively, we cannot find the mere presence of two officers delayed the "mission of the stop." *See id.* at 396. Verros and Weppler, by completing the warning and the citation as a team, did not impermissibly prolong the traffic stop.

The law prohibits the unreasonably prolonging of a traffic stop "longer than is necessary to effectuate that purpose." *Rodriguez*, 575 U.S. at 354 (cleaned up). "Ordinary inquiries incident to the traffic stop" are permissible. *See id.* at 355 (cleaned up). Examples of permissible inquiries include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* We also allow officers to "take certain negligibly burdensome precautions in order to complete [the] mission safely," as officer safety remains a paramount concern. *Id.* at 356. "Once lawfully stopped, inquiries reasonably related to the mission of addressing the traffic infraction and attending to related safety concerns are permissible." *Salcedo*, 935 N.W.2d at 578. "[T]he Fourth Amendment will tolerate

certain unrelated investigations that do not extend the roadside stop, but the stop will remain lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id.* at 579 (second alteration in original) (quoting *Rodriguez*, 575 U.S. at 355).

Under these facts, we think the officer "swap" is a negligibly burdensome act that falls under acts normally found during permissible investigations or "incident to a traffic stop." *Rodriguez*, 575 U.S. at 355. Officers often work in pairs, whether to train, expedite tasks, or ensure safety. To find that officers may not swap tasks during a traffic stop would impinge the ability of officers to act in accordance with what the situation demands. *See id.* at 356. The momentary delay was not a violation of Cox's constitutional rights.

**Conclusion.**

We affirm the denial of Cox's motion to suppress.

**AFFIRMED.**